IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

RAQUEL ALLARD,                        §
                                      §
    Plaintiff,                        §
                                      §
v.                                    §        EP-09-CV-338-KC
                                      §
ERIC H. HOLDER, JR., ATTORNEY         §
GENERAL, U.S. DEPARTMENT OF           §
JUSTICE,                              §
                                      §
    Defendant.                        §

## ORDER

On this day, the Court considered "Defendant's Motion for Summary Judgment," ECF No. 17, and "Defendant's Second Motion to Strike Plaintiff's Response to Defendant's Proposed Undisputed Facts" ("Motion to Strike"), ECF No. 39. For the reasons set forth herein, Defendant's Motion for Summary Judgment is **GRANTED** and the Motion to Strike is **DENIED**.

## I.    MOTION TO STRIKE

Defendant has filed a motion to strike Plaintiff's response to Defendant's proposed undisputed facts. Mot. to Strike. Because it may affect the factual narrative of this case, the Court addresses the Motion to Strike before setting forth the factual background.

On January 26, 2011, the Court granted Defendant's first motion to strike, finding Plaintiff's response to Defendant's proposed undisputed facts deficient because it failed to comply both with the Court's Standing Order Governing Motions for Summary Judgment ("Standing Order") and Federal Rule of Civil Procedure 56(c)(1)(A). Order 1-2, ECF No. 32.

1

Specifically, Plaintiff failed to number the paragraphs in her response in a manner that corresponded to the numbered paragraphs of Defendant's proposed undisputed facts, a requirement of the Court's Standing Order.  As a result, the Court was unable to discern which of Defendant's proposed undisputed facts were admitted and which were denied.  Furthermore, Plaintiff failed to cite to particular page numbers in the record and failed to include a separate section containing a list of each issue of material fact as to which Plaintiff contended there was a genuine issue to be tried.  *Id.* at 2.  The Court afforded Plaintiff an opportunity to submit another response to Defendant's proposed undisputed facts that complied with the Court's Standing Order and Rule 56.  *Id.*

On February 9, 2011, Plaintiff filed a second response to Defendant's proposed undisputed facts, after which Defendant filed the instant Motion to Strike.  Plaintiff's second response contains numbered paragraphs that correspond to the numbered paragraphs in Defendant's proposed undisputed facts; however, Defendant asserts that Plaintiff's second response is deficient because it fails to cite to particular page numbers in the record.  Mot. to Strike 2.  The Court agrees.  Plaintiff fails to cite to particular page numbers in the record for eighty four of the 126 numbered paragraphs.  *See* Pl.'s Resps. to Def.'s Proposed Undisputes [sic] Facts ("Plaintiff's Facts") ¶¶ 1-2, 5, 8, 13-14, 18-24, 27-28, 31-32, 34-37, 39, 41, 44, 46-47, 52, 55, 57-66, 68-77, 79, 81, 83-84, 86-96, 99-101, 103-08, 110-12, 115, 117-18, 120, 122-26, ECF No. 37.  For these numbered paragraphs, Plaintiff simply states, "See Declaration of Raquel Allard."  *Id.*

In addition, for several of Plaintiff's denials of Defendant's proposed undisputed facts, Plaintiff fails to cite to any supporting evidence whatsoever.  *See id.* ¶¶ 4, 6, 10-11, 25, 29-30, 33,

2

38, 40, 50-51, 53-54, 56, 67, 121.  Plaintiff also fails to assert disputed issues of material fact as a separate section in its response, as required by the Standing Order.  *See* Standing Order ¶ 2.  The Court agrees with Defendant that Plaintiff's second response to Defendant's proposed undisputed facts fails to comply with the Standing Order and Rule 56.  Plaintiff's counsel should take note of the deficiencies contained in Plaintiff's second response to Defendant's proposed undisputed facts as outlined above.  The Court is not required to sift through the record in search of evidence showing disputed issues of material fact.  *Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 116 n.9 (5th Cir. 2010) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).  Rule 56 and the Court's Standing Order are designed to prevent such a needless search.  Despite Plaintiff's counsel's mistakes, the Court **DENIES** Defendant's Motion to Strike so as not to unfairly prejudice Plaintiff due to her counsel's shortcomings.  Nevertheless, Plaintiff's counsel is cautioned that the Court will not be so lenient with any future failures to comply with orders and all applicable rules in any future cases.

## II.   SUMMARY JUDGMENT

### A.   Background

Unless otherwise noted, the following facts are undisputed.  Plaintiff began employment with the Bureau of Prisons on or about April 9, 1989.  Def.'s Proposed Undisputed Facts ("Defendant's Facts") ¶ 17, ECF No. 16.  Around 1992, Plaintiff was promoted to Employee Services Specialist with the Federal Correctional Institution La Tuna ("FCI La Tuna"), *id.* ¶ 18, and later she was transferred to Unit Management.  *Id.* ¶ 19.  Plaintiff currently works as a correctional counselor.  *Id.* ¶ 20.  When supervisors rate employees in performance evaluations, they select one of five different levels: (1) unsatisfactory; (2) minimally satisfactory; (3) fully

satisfactory; (4) exceeds; and (5) outstanding. *Id.* ¶ 26.  An evaluation of "Exceeds" is the second to highest evaluation possible, and is not considered a negative evaluation. *Id.* ¶¶ 26-27. For the six years prior to the 2004-05 evaluation, Plaintiff received ratings of "Outstanding." *Id.* ¶ 24.

In November 2004, after FCI La Tuna was reorganized, Plaintiff was given an assignment to "key in changes to the system" by May 2005. *Id.* ¶ 36.  As of April 2005, the assignment remained incomplete. *Id.* ¶ 37.  As a result, Pamela Worley volunteered to complete the assignment in order to meet the deadline. *Id.* ¶ 38.  Plaintiff claims that she did not complete the assignment because Worley indicated that she would complete the assignment. Pl.'s Facts ¶ 36.  For the 2004-05 period, Plaintiff received a rating of "Exceeds."  Def.'s Facts ¶ 32.  Richard Reynolds, Plaintiff's supervisor, informed Plaintiff that she had received a rating of "Exceeds" because of her failure to complete this assignment. *Id.* ¶ 35.  According to Defendant, Plaintiff made unauthorized disclosures of confidential information in May of 2005. *Id.* ¶ 28.  Plaintiff denies divulging any confidential information.  Pl.'s Facts ¶ 28.

Plaintiff contends that Reynolds subjected her to a hostile work environment. *Id.* ¶ 49. She maintained a log of events outlining instances she felt constituted harassment.  Def.'s Facts ¶ 50.  According to that log, Plaintiff alleges she suffered harassment when the following incidents took place: (1) Reynolds asked Plaintiff what was for dessert when Plaintiff provided lunch for Reynolds; (2) Reynolds asked Plaintiff via phone call how work went the previous week he was out, informed Plaintiff that he was considering applying for a position in Grand Prairie, Texas, and wondered whether Plaintiff would consider applying as well because Reynolds wanted good people with him; (3) Reynolds asked Plaintiff whether she was cleaning his drawers while she

was filing documents in Reynold's office; (4) Reynolds failed to explain why Plaintiff was rated as "Exceeds" in her evaluation; (5) as Reynolds passed Plaintiff's desk, he greeted her "good morning" and gave Plaintiff a "real evil look."  *Id.* ¶ 52.

On May 19, 2005, Plaintiff contacted an Equal Employment Opportunity (EEO) counselor to report claims of discrimination.  *Id.* ¶ 1.  Plaintiff complained she was discriminated against based on her race (Hispanic), sex (female), age (50), sexual orientation (heterosexual), religion (Christian), and national origin (American born of Mexican ancestry) when she was rated as "Exceeds" in her performance evaluation.  *Id.* ¶ 2.  On June 23, 2005, Plaintiff filed a formal discrimination complaint.  *Id.* ¶ 3.

On June 11-12, 2006, Plaintiff was working in the Religious Services unit.  *Id.* ¶ 59. Defendant contends that Plaintiff's supervisor at the time was Maxine Griego, *id.* ¶ 60, while Plaintiff denies that Griego was her supervisor at the time.  Pl.'s Facts ¶ 60.  After a number of requests and modifications of her leave schedule, Plaintiff was aware that she was scheduled to work during the week of June 11, 2006.  *Id.* ¶ 69.  On June 11, 2006, Plaintiff did not attend work and instead saw a doctor because she felt ill.  Def.'s Facts ¶ 70.  Plaintiff saw Dr. Juan Perez, a psychiatrist, who prescribed Plaintiff medication for anxiety.  *Id.*  After her appointment, Plaintiff called Institutional Duty Officer Jesse Gonzalez to advise him that she would not be reporting for work.  *Id.* ¶¶ 71-72.  Defendant contends that Gonzalez instructed Plaintiff to call Griego regarding sick leave, *id.* ¶ 73, while Plaintiff claims Gonzalez merely relayed to her a conversation he had with Griego in which Griego told Gonzalez that Plaintiff should call her. Pl.'s Facts ¶ 73.  Anticipating that Griego would deny her sick leave, Plaintiff elected not to call Griego and, instead, called Gonzalez.  Def.'s Facts ¶ 74.

5

On about June 19, 2006, Plaintiff was advised that she was being placed on AWOL status as a result of her absence on June 11-12, 2006.  Def.'s Facts ¶ 93.  When an employee is designated as absent without leave ("AWOL"), that status is changed to sick leave if warranted; for instance, depending on the results of an investigation.  Pl.'s Facts ¶ 81.  An internal investigation was conducted regarding Plaintiff's absence and her being placed on AWOL status. The investigation resulted in a proposal to suspend Plaintiff for seven days.  Def.'s Facts ¶ 99.  In that proposal, Plaintiff was charged with three acts of misconduct: (1) failure to follow proper leave procedures; (2) absences without leave; and (3) lack of candor.  *Id.* ¶ 100.  Plaintiff was charged with failure to follow proper leave procedures because she failed to contact her supervisor to request sick leave.  *Id.* ¶ 101.  She was charged with being AWOL because she failed to report for duty as scheduled and failed to seek leave from her supervisor as instructed. *Id.*  Plaintiff was charged with lack of candor because when instructed to contact her supervisor, Plaintiff initially indicated that she did not have Griego's phone number; however, in a subsequent affidavit, she stated the reason she did not contact Griego was because she feared Greigo would deny Plaintiff sick leave.  *Id.*

Warden Bragg, who arrived at FCI La Tuna on April 30, 2007, *id.* ¶ 114, sustained the charges against Plaintiff based on the independent investigation mentioned above and Plaintiff's oral presentation on the matter.  *Id.* ¶ 113.  The Bureau of Prisons has a code of conduct, sometimes referred to as a table of offenses and penalties, which sets out permissible penalties to employees for various acts of misconduct.  *Id.* ¶ 116.  For an employee charged with unauthorized absences of between one and five consecutive work days which offense constitutes

a second offense[1], the permissible range of punishment is a five to fourteen day suspension.  *Id.* ¶ 117.  Warden Bragg then issued the minimum suspension to Plaintiff, lowering the proposed seven day suspension to a five day suspension.  *Id.* ¶ 119.

On October 2, 2007, Plaintiff filed a second EEO complaint alleging she was retaliated against because of the prior EEO complaint which alleged discrimination.  *Id.* ¶ 8.  Plaintiff, however, contends that this complaint alleged retaliation due to Plaintiff's prior reporting of Reynold's purportedly harassing behavior.  Pl.'s Facts ¶ 8.  The issue accepted for investigation was whether Plaintiff suffered retaliation when she was placed on a five day suspension.  Def.'s Facts ¶ 9.  After consolidating both cases, the Administrative Judge found for the Bureau of Prisons, stating that there was no evidence that Plaintiff's "Exceeds" rating was motivated by discrimination based on a protected factor.  *Id.* ¶ 13.  With respect to the retaliation claim, the Administrative Judge found that the suspension was warranted based on Plaintiff's status as AWOL due to her failure to follow proper leave procedures and her lack of candor with management in failing to contact her supervisor to request leave.  *Id.*

On September 14, 2009, Plaintiff filed suit in this Court alleging discrimination based on age, race, national origin, sex, and religion, as well as retaliation and hostile work environment.  Compl. 9-13, ECF No. 1.  On December 7, 2010, Defendant filed the Motion for Summary Judgment.  Mot. 1.

---

[1]     The two offenses need not be related.  *Id.* ¶ 118.  Rather, any type of offense qualifies as a first offense under this analysis.  In this case, Plaintiff was issued a letter of reprimand relating to the alleged unauthorized disclosure of confidential information, which constitutes an offense.  *Id.* ¶ 119.

### B.    Standard

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory

allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence.  *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).  Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### C.      AWOL Status

Defendant argues that Plaintiff's claims regarding her AWOL status are time barred because she failed to contact an EEO counselor in a timely fashion and thus failed to exhaust administrative remedies.  Mot. 3-5.  Plaintiff counters that her claims arising from her AWOL status are not time barred because the Administrative Judge considered whether Plaintiff's AWOL status was properly issued before considering whether the suspension was retaliatory. Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Response") 20-21, ECF No. 27.

Before seeking relief for a Title VII violation, employees "must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency." *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006).  As part of the charge-filing process, an employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."  29 C.F.R. § 1614.105(a)(1) (2010).  "Generally, discrimination claims alleging conduct that occurred more than 45 days before the initiation of administrative

9

action (contacting an EEO counselor) are time barred in a subsequent action in federal court."
*Pacheco*, 448 F.3d at 791 n.11 (citing 42 U.S.C. § 2000e-16 (2006)).

In this case, Plaintiff was advised that she was being placed on AWOL status on June 19,
2006.  Def.'s Facts ¶ 93.  However, Plaintiff did not contact an EEO counselor regarding this
matter until August 16, 2007.  Mot. Ex. 3, at 1.  More than forty five days elapsed between the
date Plaintiff was notified of her designation as AWOL with respect to June 11-12, 2006, and her
contacting an EEO counselor regarding this matter.  Plaintiff cites to no authority, and the Court
is aware of none, that suspends the forty five day requirement of 29 C.F.R. § 1614.105(a)(1) if an
administrative judge considers the issue not complained of in a timely fashion in resolving
another claim.  And while equitable tolling could be available to stay the limitations period, *see*
*Miller v. Potter*, 359 F. App'x 535, 537 (5th Cir. 2010) (citing *Manning v. Chevron Chem. Co.*,
332 F.3d 874, 880 (5th Cir. 2003)), Plaintiff has made no such argument in this case.  As such,
any actions arising from Plaintiff's AWOL status are time barred and are improper for
consideration by this Court.  *See Pacheco*, 448 F.3d at 791 n.11.

## D.     Discrimination

Plaintiff contends that she suffered discrimination based on race, sex, age, religion,
national origin, and sexual orientation when she received an evaluation of "Exceeds."  Resp. 21-
24.  Defendant argues that Plaintiff cannot make out a prima facie case for discrimination, and
that even if she could, has failed to show that Defendant's alleged legitimate, non-discriminatory
reason for the evaluation is pretextual.  Mot. 7-12.

Claims of discrimination based on circumstantial evidence are analyzed under the "three-
step, burden-shifting analysis embodied in the 'modified *McDonnell Douglas* approach.'"

*Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)).  First, a plaintiff must establish a prima facie case of discrimination.  *Jackson*, 619 F.3d at 466.  Second, if a plaintiff establishes a prima facie case, a defendant must articulate a legitimate, non-discriminatory reason for the employment action at issue.  *Id.*  Third, assuming the defendant meets this burden, the plaintiff must show that the defendant's legitimate, non-discriminatory reasons were pretext for discrimination.  *Id.*

### 1.     Prima face case

Defendant contends that Plaintiff cannot make out a prima facie case because she was not subjected to an adverse employment action and cannot show that she was treated less favorably than other similarly situated employees outside the protected group.  Mot. 7-12.  The Court agrees.

To make out a prima facie case of discrimination, a plaintiff must show that he or she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) (quoting *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (citation omitted)).

"[F]or all Title VII claims, [a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating."  *McCoy*, 492 F.3d at 559 (quotation omitted).  An employment evaluation, whether positive or negative, does not fit within any of these categories.  *McCoy*, 492 F.3d at 556.  Furthermore, although Plaintiff admits that a rating of "Exceeds" is not considered a negative evaluation,

11

Def.'s Facts ¶¶ 26-27, a negative evaluation has been expressly held not to constitute an adverse employment action. *See Smith v. Cohen*, 247 F.3d 240, at *3 (5th Cir. 2001) (unpublished table decision) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 708 (5th Cir. 1997)); *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 373 n.11 (5th Cir. 1998). Therefore, even if Plaintiff's rating of "Exceeds" constituted a negative employment evaluation, it is not an adverse employment action; thus, Plaintiff cannot meet the third requirement of showing a prima facie case of discrimination.

Plaintiff has further failed to meet the fourth requirement of showing a prima facie case of discrimination. The fourth element requires Plaintiff to show that she was treated less favorably than similarly situated individuals outside the relevant protected groups. *Fahim*, 551 F.3d at 350. When asked for examples of individuals who received more favorable treatment, Plaintiff mentioned Anna Melton and Barbara Pena. Pl.'s Facts ¶ 43. Pena is a Hispanic female who is Christian, while Melton is a Christian female approximately the same age as Plaintiff. *Id.* ¶ 44. The two individuals Plaintiff cites, however, span all of the protected categories forming the basis for Plaintiff's discrimination claims. To meet the fourth element of a prima facie case of discrimination, a plaintiff must provide examples of those *outside* her protected class. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004) (emphasis added). Plaintiff has failed to do so. In addition, Plaintiff has not offered evidence that Melton and Pena did not complete a major assignment, and thus are similarly situated. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) (plaintiff must show that her conduct at issue and the conduct of those outside her protected class who received more favorable treatment are nearly identical); *Smith v. Wal-Mart Stores (No. 471)*,

891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam) (plaintiff must demonstrate "that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained") (third alteration in original).

In sum, Plaintiff has failed to make a prima facie case of discrimination because she has failed to show Plaintiff has suffered an adverse employment action and offer examples of similarly situated individuals outside her protected class that were treated more favorably.

### 2. Legitimate non-discriminatory reason

Even if Plaintiff had made a prima facie case of discrimination, the Court finds that Defendant has met its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's rating of "Exceeds." Reynolds informed Plaintiff that she had received a rating of "Exceeds" because of her failure to complete the major project of keying in changes to the system in a timely fashion. Def.'s Facts ¶ 35. In fact, Plaintiff herself admitted that failure to complete a major assignment is adequate grounds to rate an employee at a level below "Outstanding." Mot. Ex. 8, at 58:15-22.

The Court finds Defendant's explanation to be a legitimate, non-discriminatory reason for Plaintiff's rating. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320-21 (5th Cir. 1997) (employee's failure to complete assigned tasks a legitimate, non-discriminatory reason for discharge). Plaintiff has offered no evidence or explanation to show that this explanation is pretext and that the true motive behind her rating is discriminatory. Therefore, even if Plaintiff had made out a prima facie case of discrimination, summary judgment would still be appropriate on her discrimination claims because she has failed to show that Defendant's legitimate, non-

13

discriminatory reason for her performance evaluation was pretextual.  Lastly, the Court notes that plaintiff's counsel's decision to bring a claim for discrimination based on Plaintiff's receiving the second to highest evaluation possible borders on frivolous.

### E.       Retaliation

Plaintiff alleges she suffered unlawful retaliation when she was rated as "Exceeds" and when she was issued a five day suspension.  Resp. 24-25.  Defendant counters that Plaintiff cannot make a prima facie case because she cannot show causation, and even if she could, that Plaintiff has failed to show that Defendant's purportedly legitimate, non-retaliatory reasons for the evaluation and suspension were pretextual.  Mot. 12-16.

The *McDonnell Douglas* burden shifting framework also applies to retaliation cases. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  If a plaintiff sets out a prima facie case of retaliation, then the burden shifts to the employer to articulate a legitimate non-retaliatory reason for its employment action.  *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citing *McCoy*, 492 F.3d at 557).  If the employer meets this burden of production, then the plaintiff bears the burden of showing that the employer's reason is a pretext for the actual retaliatory reason.  *Id.*

### 1.       Prima facie case

To make a prima facie case of retaliation, a plaintiff must show: (1) that he or she participated in a protected activity; (2) that his or her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the materially adverse action.  *Id.* (citing *McCoy*, 492 F.3d at 557).  Defendant contends that Plaintiff cannot show causality.  Mot. 13-14.  The Court agrees.

14

### a.     "Exceeds" rating

Plaintiff argues her performance evaluation constituted retaliation for complaining of Reynold's allegedly harassing behavior.  Resp. 24-25.  However, Plaintiff cannot show causation. At the time she received her performance evaluation on April 19, 2005, Plaintiff admits she had not yet filed a complaint against Reynolds.  Mot. Ex. 8, at 59:25-60:5.  Plaintiff even went so far as to admit that her complaining against Reynolds for his allegedly harassing behavior was not the basis for her performance evaluation, *id.* at 60:6-15, which begs the obvious question why Plaintiff filed this claim with the Court.  In any event, there was no causation between her complaint against Reynolds and her performance evaluation because her rating predates her complaint.  As such, Plaintiff has failed to make a prima facie case of retaliation based on receiving a rating of "Exceeds."

### b.     Suspension

Plaintiff has also failed to show causality between filing her first EEO complaint and her five day suspension.  Plaintiff filed her first EEO complaint on June 23, 2005.  Def.'s Facts ¶ 3. However, Plaintiff was not suspended until July 18, 2007.  Mot. Ex. 8, at 184:4-25.  The two year gap between Plaintiff's first EEO complaint and her suspension attenuates any possible connection between the two so as to defeat causation.  *See Mayberry v. Mundy Contract Maint. Inc.*, 197 F. App'x 314, 317 (5th Cir. 2006) (finding two year gap between act in question and termination too attenuated to find causation in retaliation claim) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (finding a five month gap between act in question and allegedly retaliatory act too attenuated to find causation).  Therefore, Plaintiff cannot make a prima facie case of retaliation

with respect to her suspension because she cannot show causation between filing her first EEO complaint and her suspension.

### 2. Legitimate non-retaliatory reason

Even if Plaintiff could make a prima facie case of retaliation, Defendant has offered legitimate, non-retaliatory reasons for the performance evaluation and for Plaintiff's suspension. As discussed above, Defendant claims that Plaintiff received an "Exceeds" rating in her performance evaluation because she failed to timely complete a major assignment. With respect to her suspension, Warden Bragg indicated that he issued the suspension after the result of an independent investigation showed Plaintiff was properly designated AWOL for her absences on June 11-12, 2006, and after hearing a presentation from Plaintiff. Def.'s Facts ¶ 113. Defendant contends that Plaintiff failed to contact her supervisor, Griego, as requested, and as a result failed to follow proper procedure. *Id.* ¶ 100. Lastly, the five-day suspension was below the minimum punishment prescribed by the guidelines for Plaintiff's situation: seven days. The Court finds these reasons for Plaintiff's suspension to be both legitimate and non-retaliatory. *See LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (deeming defendant's explanation for plaintiff's suspension legitimate and non-retaliatory where defendant suspended plaintiff due in part to plaintiff's departure from work without authorization).

### 3. Pretext

To show pretext, Plaintiff disputes the underlying events, such as whether she was properly designated as AWOL and therefore whether she should have been suspended. "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that

retaliation was the real motive." *McCoy*, 492 F.3d at 562.  However, the Court's job is "not to engage in second-guessing of an employer's business decisions." *LeMaire*, 480 F.3d at 391. "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones." *Id.* (citing *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (stating that "even an incorrect belief that an employee's performance is inadequate" is a legitimate reason)).

Plaintiff merely disputes the underlying events leading up to her suspension; specifically, whether she followed protocol in requesting sick leave for June 11-12, 2006, and whether she attempted to offer a doctor's note to Griego.  "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Id.* (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).  As such, Plaintiff has failed to show that Defendant's legitimate, non-retaliatory reasons for the evaluation and suspension are pretext.

In sum, Plaintiff cannot make a prima facie case for retaliation with respect to her performance evaluation or her suspension because she cannot show causation.  Even if she could, she has not shown that Defendant's legitimate, non-retaliatory reasons are pretextual. Accordingly, the Court grants summary judgment on Plaintiff's retaliation claim.

###    F.    Hostile Work Environment

Plaintiff contends she was subjected to a hostile work environment due to Reynold's allegedly harassing behavior and other non-specific employment acts Defendant took.  Resp. 25-28.  Defendant counters that Plaintiff cannot state a prima facie case of hostile work environment because such conduct is not sufficiently severe or pervasive as to alter a term, condition, or privilege of employment.  Mot. 16-20.

To make a prima facie showing of hostile work environment, a plaintiff must show: (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take adequate remedial action. *McGarry v. Univ. of Miss. Med. Ctr.*, 355 F. App'x 853, 858 (5th Cir. 2009) (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005)). Where, as in this case, the alleged harassment is perpetrated by a supervisor with immediate or successively higher authority, the employee need only satisfy the first four elements set forth above. *See Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

"To affect a term, condition, or privilege of employment, the harassing conduct 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain*, 534 F.3d at 479 (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* In determining whether a hostile work environment exists, courts assess the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009). Merely offensive conduct, however, is not actionable. *Harris*, 510 U.S. at 21.

In this case, Plaintiff claims Reynolds created a hostile work environment when he: (1)

18

asked Plaintiff what was for dessert when Plaintiff provided lunch for Reynolds; (2) asked

Plaintiff via phone call how work went the previous week he was out, informed Plaintiff that he

was considering applying for a position in Grand Prairie, Texas, and wondered whether Plaintiff

would consider applying as well because Reynolds wanted good people with him; (3) asked

Plaintiff whether she was cleaning his drawers while she was filing documents in his office; (4)

failed to explain why Plaintiff was rated as "Exceeds" in her evaluation; (5) as he passed

Plaintiff's desk, he greeted her "good morning" and gave Plaintiff a "real evil look."  Def.'s Facts

¶ 52.  Because it is dispositive, the Court addresses the fourth factor required to establish a claim

for hostile work environment, whether the harassment affected a term, condition, or privilege of

employment.

        The facts of this case, in their totality, are not sufficiently severe or pervasive so as to

alter the conditions of Plaintiff's employment.  The incidents Plaintiff alleges are not frequent,

nor do they approach severe as Fifth Circuit case law defines it.  In addition, Reynold's conduct

is not physically threatening or humiliating.  Finally, Reynold's conduct did not unreasonably

interfere with Plaintiff's work performance, as demonstrated by Plaintiff's high performance

evaluations and her continuing employment by Defendant.

        In addition, courts in the Fifth Circuit have found that conduct more egregious than that

alleged here is not so objectively severe or pervasive as to alter the conditions of employment

and constitute a hostile work environment.  *See, e.g., Hockman v. Westward Commc'ns, LLC*,

407 F.3d 317, 321-22, 329 (5th Cir. 2004) (defendant's conduct did not alter conditions of

employment where plaintiff claimed her immediate supervisor commented on her body and her

buttocks, made comments to plaintiff about the bodies of other employees, slapped plaintiff's

behind with a newspaper, brushed up against her breasts and behind, attempted to kiss her, asked her to come in early so they could be alone together, and once stood in the doorway of the ladies' room to watch plaintiff wash her hands); *Sheperd v. Comptroller of Pub. Accounts of State of Tex.*, 168 F.3d 871, 872 (5th Cir. 1999) (defendant's conduct did not alter conditions of employment where plaintiff claimed the alleged harasser: (1) made two inappropriate comments on two different occasions "your elbows are the same color as your nipples" and "you have big thighs"; (2) attempted to look down the plaintiff's clothing several times; (3) touched her arm several times, once rubbing his hand from her shoulder down to her wrist; and (4) twice, patted his lap and remarked "here's your seat").

The Court questions the judgment of plaintiff's counsel to bring a claim for hostile work environment based upon facts such as these, including Plaintiff's being asked what was for dessert, being greeted "good morning" along with an "evil look," and being told by her supervisor that he wanted good employees like her to follow him to a new position.  The cases cited above involved conduct far more severe and pervasive than that alleged here; yet in those cases, the conduct did not, as a matter of law, alter the conditions of employment so as to make a claim for hostile work environment.  Furthermore, the evidence shows that Defendant's employment actions, such as department transfers as a result of Plaintiff's alleged disclosure of confidential information, were not taken on the basis of Plaintiff's membership in a protected class.  Defendant has shown the absence of a genuine issue of material fact on Plaintiff's claim for hostile work environment.  Therefore, the Court finds that the hostile work environment claim fails as a matter of law and grants summary judgment for Defendant with respect to that claim.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's Motion, ECF No. 33, is **GRANTED**.

Defendant's Motion to Strike, ECF No. 39, is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court close the case.

**SO ORDERED**.

**SIGNED** on this 23rd day of March, 2011.


KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE